# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>RAMIRO ASTELLO,<br><br>    Defendant. | No. CR97-3008-LTS-KEM<br><br>**MEMORANDUM**<br>**OPINION AND ORDER** |

## *I.*     *INTRODUCTION*

This matter is before me on a motion (Doc. 969) for compassionate release filed by counsel for Ramiro Astello, along with supporting exhibits (Docs. 969-1 through 969-20). The Government did not file a resistance. Instead, the parties submitted a joint status report (Doc. 979) on January 29, 2025, indicating the Government's agreement that the 18 U.S.C. § 3582(c)(1)(A) and 18 U.S.C. 3553(a) factors support a reduction of Astello's sentence to 348 months. Oral argument is not necessary. *See* Local Rule 7(c).

## *II.*     *BACKGROUND*

This case arose out of a kidnapping and murder that occurred on June 7, 1997, the details of which have been set out in the court's previous orders. *See, e.g.*, Doc. 707. Astello is one of numerous defendants charged and convicted of crimes related to that murder. On May 17, 1999, the court sentenced Astello to life imprisonment after a jury found him guilty of one count of kidnapping resulting in death in violation of 18 U.S.C. §§ 1201(a) & 2 (Count 1), one count of conspiracy to commit kidnapping resulting in death in violation of 18 U.S.C. § 1201(c) (Count 2) and one count of use of a firearm in

relationship to a crime of violence in violation of 18 U.S.C. § 924(c) & (j) (Count 3).[1] Doc. 722 at 1. The court also imposed a five-year term of supervised release. *Id.* at 3. Astello filed a motion pursuant to 28 U.S.C. § 2255, which the court denied. Docs. 780, 801; *see* C02-3049-MWB. The Eighth Circuit Court of Appeals affirmed. Doc. 809.

In his motion for compassionate release, Astello argues that the disparate sentence he received, his age at the time of the crime and his rehabilitation in prison combine to form an extraordinary and compelling circumstance that justifies his release. He also argues that the 18 U.S.C. § 3553(a) factors weigh in favor of release. *See generally* Doc. 969. According to the online Bureau of Prisons (BOP) inmate locator, Astello is 46 years old and is currently located at Greenville FCI, in Greenville, Illinois.

### III. COMPASSIONATE RELEASE STANDARDS

The term "compassionate release" refers to 18 U.S.C. § 3582(c)(1)(A), which allows a defendant to directly petition a district court for a sentence reduction "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." If a defendant fully exhausts administrative remedies, the court may reduce the defendant's sentence, after considering the factors set forth in 18 U.S.C. § 3553(a) to the extent they are applicable, if the court finds that "extraordinary and compelling reasons

---

[1] Count 1 had a mandatory term of life imprisonment or death; the guideline range was also life imprisonment. Doc. 718 at 25. The term of life imprisonment was imposed on Counts 1, 2 and 3, to be served concurrently. Doc. 722 at 2.

warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i); *see also United States v. Rodd*, 966 F.3d 740, 748 (8th Cir. 2020).[2]

## IV. ANALYSIS

### A. *Administrative Exhaustion*

Astello asserts that he has fully exhausted his administrative remedies. Defense counsel has filed a request that was submitted to the Warden at FCC Forrest City Medium on September 6, 2024,[3] to which no response was received. Doc. 969 at 12; Doc. 969-1. Because more than 30 days have lapsed since that request, I find Astello has fully exhausted his administrative remedies as required by § 3582(c)(1)(A).

### B. *Extraordinary and Compelling Reasons*

Astello argues that a combination of factors supports granting compassionate release. He asserts, and the Government agrees, that the disparity between his sentence and that of his co-defendants, his young age at the time of the offense, the length of his sentence (life without the possibility of parole) and his extraordinary rehabilitation while in custody together create an extraordinary and compelling circumstance such that relief is appropriate. Doc. 969 at 16, 24-27; *see also* Doc. 979.

The United States Sentencing Guidelines (USSG) delineate several situations in which extraordinary and compelling reasons exist. These include medical circumstances of the defendant, age of the defendant, family circumstances, if the defendant has been a

---

[2] Under the sentencing guidelines as amended November 1, 2023, extraordinary and compelling reasons for compassionate release exist under limited circumstances: (1) medical circumstances of the defendant, (2) age of the defendant, (3) family circumstances of the defendant, (4) where a defendant is the victim of sexual or physical abuse by individuals who had custody or control over the defendant, (5) other circumstances "similar in gravity" or (6) where the defendant received an unusually long sentence of which they have served at least 10 years of that term of imprisonment. USSG § 1B1.13(b).

[3] Astello was housed at FCC Forrest City Medium at that time.

victim of abuse and a catch-all "other reasons" category. *See* USSG § 1B1.13. Astello relies on the "other reasons" category under USSG § 1B1.13(b)(5). A defendant is eligible for compassionate release under this section when "the defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)." *Id.* § 1B1.13(b)(5). Further, the Sentencing Guidelines state that "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason . . . However, rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." *Id.* § 1B1.13(d).

The Sentencing Commission notes that "other reasons" need not be similar in "nature and circumstance" to the specified reasons; "[r]ather, they need only be similar in gravity." USSG § 1B1.13, comment "Revisions to 'Extraordinary and Compelling.'" Additionally, the commentary states that if a defendant demonstrated "commendable rehabilitation while incarcerated" and "the offense conduct occurred when the defendant was in his late teens or early twenties," a court could determine that the combination of those two factors constitutes an extraordinary and compelling circumstance. *Id.*

I will address Astello's arguments in turn regarding the "other reasons" category. First, Astello argues that the disparity between his sentence and that of "his co-defendants with similar levels of culpability is extreme enough to rise to the level of extraordinary and compelling." Doc. 969 at 15. As will be discussed in greater detail below, the offense conduct in this case involved a large conspiracy. All culpable parties other than Astello and the actual murderer have either been released from custody or will be eligible for parole. However, alleged sentencing disparities are one of the 18 U.S.C. § 3553(a) factors and the need to avoid unwarranted sentencing disparities does not, alone, create an extraordinary or compelling circumstance for compassionate release. *See, e.g.*, *United States v. Hoskins*, No. CR08-00118, 2024 WL 2362385, at *3 (S.D. Iowa May

4

23, 2024) (finding a sentencing disparity amongst co-defendants is not an extraordinary and compelling reason for relief).[4]

Next, Astello asserts that his age at the time of the crime support a finding of extraordinary and compelling circumstances. Doc. 969 at 16. Astello contends that because he was only 18 years old at the time of the crime, his brain was not fully developed. *Id.* Indeed, Astello turned 18 on June 4, 1997, and the crime happened in the early morning hours of June 7, 1997, when he was 18 years old and three days. Doc. 718 at 2. Astello notes that in 2012, the United States Supreme Court held that life without parole sentences for minors violated the Eighth Amendment's ban on cruel and unusual punishment. *Id.* at 17; *see Miller v. Alabama*, 567 U.S. 460 (2012). Astello contends that the research underlying the *Miller* decision was "neither widely available nor universally accepted, even for defendants under age 18, when Ramiro was sentenced in 1999." Doc. 969 at 17. Finally, he maintains that many courts have considered the defendant's age at the time of an offense to support finding extraordinary and compelling circumstances for compassionate release. *Id.* (collecting cases).

Astello correctly notes that the Supreme Court held that children are "constitutionally different from adults for purposes of sentencing." *Miller*, 567 U.S. at 471 (citing *Graham v. Florida*, 560 U.S. 48 (2010) *and Roper v. Simmons*, 543 U.S. 551 (2005)). Indeed, "[b]ecause juveniles have diminished culpability and greater prospects for reform," the Supreme Court has found that the "most severe punishments" for minors—including life imprisonment without parole—are inappropriate. *Miller*, 567 U.S. at 471. The Supreme Court has recognized that juveniles have a "lack of maturity and an undeveloped sense of responsibility, leading to recklessness, impulsivity and

---

[4] I can consider this factor if I find other factors amount to an extraordinary and compelling circumstance. However, the Eighth Circuit has held that sentencing disparities refers to "*national disparities*, not differences among co-conspirators." *United States v. Baez*, 983 F.3d 1029, 1044 (8th Cir. 2020) (emphasis in original). In any case, I will consider this factor to provide context for evaluating the equity and proportionality of Astello's sentence.

heedless risk-taking[,]" they "are more vulnerable . . . to negative influences and outside pressures," and "a child's character is not as well formed as an adult's." *Id.* (quoting *Roper*, 543 U.S. at 570) (quotations omitted).

The Supreme Court has further recognized that these differences between minors and adults do not vanish the moment an individual turns 18. *See Roper*, 543 U.S. at 574 ("The qualities that distinguish juveniles from adults do not disappear when an individual turns 18."); *cf. United States v. Cruz*, No. 94-CR-112 (JCH), 2021 WL 1326851, at *5 (D. Conn. Apr. 9, 2021) ("[T]hat the Supreme Court has drawn this line at age 18 for purposes of the Eighth Amendment does not extinguish the relevance of these characteristics in assessing, as a general matter, an 18-year-old's blameworthiness in committing a crime."). As such, many district courts have found that a defendant's young age at sentencing supports finding an extraordinary and compelling reason to grant a sentence reduction. *See, e.g.*, *United States v. Lara*, 658 F. Supp. 3d 22, 33 (D.R.I. 2023) (The defendant's young age (18) at the time of the criminal conduct created an extraordinary and compelling reason for a sentence reduction as in the twenty years following the defendant's sentencing, "science, medicine, and legal thought have all underscored that youthful offenders are less culpable than older adults because their brains are less developed in critical areas."); *see also United States v. Espino*, No. 03-20051-08-JWL, 2022 WL 4465096, at *4 (D. Kan. Sept. 26, 2022) (finding the fact that the defendant was 20 years old at the time he received a life sentence to support a finding of extraordinary and compelling circumstances).

The record developed by Astello supports this conclusion. Had this crime occurred a few days earlier, Astello would have been 17 and his sentence of life without parole would be unconstitutional. James Garbarino, developmental psychologist and Professor Emeritus of Psychology at Cornell University, prepared a developmental analysis on Astello in light of the Supreme Court case *Miller v. Alabama*, 567 U.S. 460 (2012). *See generally* Doc. 969-7. Garbarino concluded:

> [Astello's] behavior reflected immature impetuosity due to his brain development. His behavior was the result, in part, of the dysfunctional impact of the significant childhood adversity he experienced growing up. He evidenced adolescent-type problems with making good decisions ("executive function") and managing his emotions ("affective regulation"). Peer pressure [sic] and influence played a key role in his involvement and behavior in the crime of 1997, for which [he] is currently incarcerated. The nature of his behavior at age 18 could not and did not accurately predict what he could become as an adult, because his potential for rehabilitation was masked by his youth.

Doc. 969-7 at 10-11 (emphasis omitted). I find that Astello's age at the time of the criminal conduct, 18 years and three days old, supports a finding of extraordinary and compelling circumstances. *See Cruz*, No. 94-CR-112 (JCH), 2021 WL 1326851, at *5 ("[A] person 20 weeks past his eighteenth birthday exhibits the same hallmark characteristics of youth that make those under 18 less blameworthy for criminal conduct than adults.").

As noted above, rehabilitation alone is not sufficient to establish an extraordinary and compelling circumstance. However, it may be considered alongside other factors—especially in a case like this, in which Astello's subsequent conduct not only demonstrates rehabilitation but also underscores how significantly he has matured since. While in custody, Astello has earned his GED and an associate's degree from the University of Wisconsin, and has also taken various enrichment and religion classes. Doc. 969 at 25; Doc. 969-9 at 2; Doc. 969-11 at 2-5. He has also maintained steady employment. For example, he worked in a furniture factory as a production clerk, a job that required the use of Excel and SAP, both skills that he acquired while incarcerated. Doc. 969 at 26. When incarcerated at FCI Forrest City,[5] he facilitated hobby craft and wellness programs in the Recreation Department. *Id.* Astello's disciplinary record in the BOP is near perfect. He has received just three citations in his 27 years of incarceration, with all

---

[5] Astello was recently moved to a different BOP facility.

being more than 10 years old and none involving violence. Doc. 969 at 28-29; Doc. 969-12 at 2. Astello's excellent record while in custody for more than 27 years, combined with his educational achievements, work history and mentorship support a finding that his "rehabilitation is truly exceptional." *See Cruz*, No. 94-CR-112 (JCH), 2021 WL 1326851, at *9 (finding "exceptional" rehabilitation where a defendant had "exemplary conduct while imprisoned for more than 26 years," took advantage of educational opportunities and mentored others). It also shows that Astello has continued to mature beyond the person he was when he committed these crimes at age 18.[6]

Finally, the sentencing judge in this case stated that he was bound by the sentencing guidelines at the time he sentenced Astello but otherwise would not have imposed a life sentence because Astello "turned 18 just two days before the crime" and "he was not the most culpable of all the defendants." Doc. 969-3 at 2. I find that (1) Astello's age at time he committed the crime, (2) his rehabilitation while in custody, (3) the fact that the sentencing judge did not believe a life sentence was appropriate and (4) the fact that all other defendants (except the actual murderer) have either been released or will eventually be eligible for release, all combine to establish an extraordinary and compelling circumstance under § 1B1.13(b)(5). *See United States v. Espino*, No. 03-20051-08-JWL, 2022 WL 4465096, at *4 (D. Kan. Sept. 26, 2022) (finding extraordinary and compelling circumstances for a sentence reduction where a defendant received a life sentence at age 20, spent over 20 years in prison, received no serious infractions and presented extensive evidence of his rehabilitation and reformation during incarceration); *see also United States v. Ramsay*, 538 F. Supp. 3d 407 (S.D.N.Y. 2021) (recognizing extraordinary and compelling circumstances when the defendant was 18 years old at the time of the offense and presented evidence of his mitigating upbringing and substantial rehabilitation); *cf. United States v. Walton,* No. 09CR-157, 2022 WL 2177533, at *5 (E.D. La. June 16,

---

[6] I will discuss additional details related to Astello's rehabilitation in the context of the § 3553(a) factors. *See supra* section IV.C.

2022), at *9 (concluding that Walton's youth at the time of sentencing did not constitute an extraordinary and compelling circumstance because the sentencing court explicitly considered his young age, he had a lengthy disciplinary history in prison and received no letters of support from correctional staff).

Because Astello has alleged an extraordinary and compelling circumstance that justifies compassionate release, I will consider whether release is appropriate in light of the § 3553(a) factors.

### C. *Section 3553(a) Factors*

Guideline § 1B1.13(a)(2) provides that compassionate release is appropriate only where "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g). Moreover, § 3582(c)(1)(A) requires that I consider the factors set forth in 18 U.S.C. § 3553(a) before granting a motion for compassionate release. Section 3553(a) requires that I consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for—
>
>> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines [issued by the Sentencing Commission . . .;]
>
> (5) any pertinent policy statement [issued by the Sentencing Commission . . .']

9

> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Astello argues that the § 3553(a) factors weigh in favor of his release. Doc. 969 at 28. He contends that his criminal history, his young age at the time of the crime and the sentencing disparity between him and his co-defendants support his release. *Id.* Additionally, he asserts that deterrence would not be undermined with his early release, as he has been incarcerated for almost three decades. *Id.* Finally, he maintains that he does not pose a danger to the public. *Id.* The Government agrees that the § 3553(a) factors support early release. Doc. 979 at 1.

The nature and circumstances of Astello's offense are disturbing. On June 6, 1997, Luis Lua, a friend of Ramiro Astello and a fellow gang associate of Ramiro's brother, Juan, called Juan and asked him to come to his apartment. Doc. 718 at 11, ¶ 53. Ramiro Astello drove Juan to Lua's residence. *Id.*; Doc. 969 at 8. When Ramiro and Juan arrived, Sky Erickson was at Lua's residence against his will, as Lua had kidnapped him over a drug debt. Doc. 718 at 11, ¶ 53; Doc. 969 at 8. Lua and the Astello brothers escorted Sky from the house and placed him into Ramiro Astello's car. Doc. 718 at 11, ¶ 53. From there, Ramiro Astello drove to Ricardo Castillo's residence.

Castillo was a known drug dealer and he "directed Lua to take Sky into the country, beat him up and leave him." *Id.* at 12, ¶ 54. And indeed, that night Ramiro drove Juan, Lua, Sky and a few others from Estherville, Iowa, to a farmhouse in Minnesota where Lua shot and killed Sky. *Id.* at 12-13, ¶¶ 54-58. Although Ramiro Astello did not pull the trigger, his involvement in Sky's kidnapping and murder is incredibly aggravating. Murder is the most serious of crimes. *United States v. Cruz*, No. 94-CR-112 (JCH), 2021 WL 1326851, at *12 ("The finality of ending another person's life, without any mitigating circumstances, *e.g.*, self-defense or negligence, and

the consequent effect upon the victim's loved ones is almost unspeakable."). Therefore, the nature and circumstances of the offense weigh against release.

Astello's criminal history is non-existent. As noted above, he was only 18 at the time of the offense. He has no juvenile or adult criminal convictions, and thus had zero criminal history points. Doc. 718 at 22. Although having no criminal history as an 18-year-old is not unusual, Astello's lack of criminal history is somewhat mitigating.

Astello's childhood situation is further mitigating.[7] He was born in Brownsville, Texas, five years after his parents had migrated to the United States from Mexico. Doc. 969-6 at 3. Astello's father, Anacleto, was an alcoholic and physically abusive to him, his siblings, and his mother, Nicolasa. Doc. 718 at 23, ¶ 128; Doc. 969-6 at 12. On one occasion, his father dragged his mother out of the house – "[h]olding her hair in his fist, Anacleto hit and punched Nicolasa in the yard." Doc. 969-6 at 14. Astello and his siblings witnessed this and ran to nearby construction workers for help but were ignored. *Id.* Astello stated that when Anacleto would hit his mother, he "would hold his breath until he lost consciousness to protect himself from the stress of the abuse." *Id.* Moreover, his mother was forced to move the children from house to house because his father "would spend all his money drinking and would get into fights," causing neighbors to complain and landlords to evict the family. *Id.* at 12.

At age 10, Astello's parents relocated from Brownsville, Texas, to Estherville, Iowa, for work. Doc. 969-6 at 15. Astello and his siblings had a difficult time adjusting to their new home in Iowa. They experienced racism at school. *Id.* at 16 ("White children on the school bus spat at them, called them wetbacks, and told them to go back

---

[7] Probation's presentence report contains relatively minimal information regarding Astello's childhood. Doc. 718 at 23. Astello's counsel hired SAGE, the Sentencing Advocacy Group of Evanston, to conduct a bio-social history on Astello. *See* Doc. 969-6. Haley Volpintesta, a mitigation specialist and sociologist who has worked with SAGE for a decade, prepared the report. Volpintesta stated that she spent more than 220 hours on Astello's investigation. In preparing the report, she conducted interviews with him and his family, reviewed documents and a variety of medical, educational and mental health records, among other things. *Id.* at 2.

11

to Mexico."). Anacleto's abuse of Nicolasa and the children continued. *Id.* at 17 ("The police responded to domestic disturbance calls several times" and after one of Anacleto's beatings, Astello "had thick red welts on his skin and could not sit down."). Additionally, the farmhouse that his family lived in was dilapidated and dangerous. Astello's brother David suffered an electric shock, which Astello witnessed and thought David was going to die. *Id.* Astello's unstable and abusive childhood situation is mitigating. *See United States v. Ramsay*, 538 F. Supp. 3d 407, 424 (S.D.N.Y. 2021) ("Subjected to a history of childhood abuse and neglect, he had less capacity than many to resist invitations to criminal activity.").

Additionally, Astello's young age at the time of the offense and his strong evidence of rehabilitation support a reduced sentence. Astello has made tremendous efforts to atone for his criminal conduct. In 2010, Astello wrote a letter to law enforcement volunteering information and expressing a willingness to testify in Ricardo Castillo's trial in Minnesota.[8] Doc. 969 at 27; *see also* Doc. 969-13 at 2. The prosecutors informed him that he would not be eligible to receive anything in exchange for his testimony, which "he understood and expressed a desire to continue." Doc. 969-13 at 2. Matthew Frank, the Minnesota Assistant Attorney General on the case, recounted that in doing so, "Astello placed himself and his family at considerable risk." *Id.* at 3. Further, Frank stated that Astello was honest about his involvement in the murder and kidnapping of Sky Erickson, "readily accepted blame," "appeared credible and sincere," answered all questions "forthrightly and openly" and "maintained composure despite being on the stand for hours." *Id.*

In 2011, Astello sent a letter to Joni Ketter, Sky Erickson's mother, expressing (in her words) "deep remorse, regret, and the mindset of a man who had matured a great

---

[8] Castillo "ordered Luis to kidnap and murder Sky." Doc. 969 at 14. He was not a co-defendant in Astello's federal case as he fled to Mexico after the murder. He was tried in the state of Minnesota in 2011. *Id.*

deal while incarcerated." *See* Doc. 969-6 at 8; *see also* Doc. 969-2 at 2. Ketter supported Ramiro's 2012 clemency petition. Doc. 969 at 27; Doc. 969-2 at 2. These post-offense actions provide evidence of Astello's reformation.

Astello has received 20 letters from correctional officers, work supervisors, teachers, religious service employees and other inmates who all express enthusiastic support for his early release. These individuals commented on Astello's positive attitude, strong work ethic, professionalism and leadership skills. Many stated that his commitment to rehabilitation is rare among those with a life sentence. *See* Doc. 969-14 at 2 ("Even with a life sentence, where most turn . . . []to criminal activity and live the 'Prison Life,' he rose above the bar and focused on perpetual, long lasting success."); *see also* Doc. 969-15 at 2 ("Mr. Astello displays a rare quality amongst inmates with lengthy sentences like his, a desire to better/improve himself in any manner he can. . ..."). These letters from prison staff and inmates support a finding of rehabilitation. *See United States v. Douglas*, 2021 WL 214563, at *8 (D.D.C. Jan. 21, 2021) ("Courts have found letters from prison staff—'written by the unbiased people who have spent more time with [defendant] than anyone else—to be powerful evidence of his rehabilitation.'") (quotations omitted).

Two of Astello's support letters deserve specific recognition. First, he received a letter from the sentencing judge, who visited Astello in prison and remarked that "I knew right away that he was a very changed person." Doc. 969-3 at 2. He further stated that "it is my deepest regret as a federal judge that I was required to give Mr. Astello a life sentence;" "[h]aving sentenced over 4000 offenders in five different federal district courts, this is the sentence that troubles me the most." *Id.* at 2-3. He requested that Astello be granted early release. *Id.* at 3.

Ms. Ketter, Sky Erickson's mother, also wrote a letter supporting a sentence reduction for Astello. In 1999, she gave a victim impact statement at Astello's sentencing, remarking that "I feel really nothing toward you at all." Doc. 730 at 53-54; *see also* Doc. 969-2 at 2. However, in her 2024 support letter, Ketter states that her

13

feelings towards Astello have changed as he "chose to better himself," "make the best of a horrible situation" and "has paid for his involvement in the death of my son." Doc. 969-2 at 3. She states that she has forgiven him and requests his release from custody as soon as possible. *Id.*

Moreover, as noted above, Astello argues that his sentence is disparate from that of his co-defendants. However, the Eighth Circuit has stated that the need to avoid unwarranted sentencing disparities refers to "national disparities, not differences between co-conspirators." *United States v. Crandall*, No. 89-CR-21-CJW-MAR, 2024 WL 945328, at *9 (N.D. Iowa Mar. 5, 2024) (citing *United States v. Baez*, 983 F.3d 1029, 1044 (8th Cir. 2020)); *see also infra* n.5. In any case, I find Astello's argument to be relevant as it relates to the need for the sentence imposed (*see* 18 U.S.C. § 3553(a)(2)), particularly in light of his relative culpability and young age at the time of the offense.

Astello asserts that other than Luis Lua, the actual killer, he is the only individual connected with the death of Sky Erickson to be serving a life sentence without the possibility of parole. Doc. 969 at 13. All other co-defendants in his federal case have been released from custody. *Id.* Additionally, the three minors who participated in the criminal conduct, and who were prosecuted in state court, have all been released or will be eligible for release. *Id.* at 13-14. Those include Thomas Mann, who was 10 months younger than Astello and Ryan Wedebrand, who was one year younger than Astello. Finally, Ricardo Castillo, who ordered Lua to kidnap and murder Sky Erickson, fled to Mexico following the murder. He was extradited in 2006, found guilty of kidnapping and intentional second-degree murder in the state of Minnesota and will ultimately be eligible for parole. *Id.* at 14.

Astello is now 46 years old. Although his criminal conduct was reprehensible, it was less serious than that of Lua and Castillo. I find that the sentencing disparity between Astello and his co-defendants supports granting compassionate release, as it is relevant to the need for the sentence imposed.

Astello was sentenced to a mandatory minimum sentence of life imprisonment, which typically weighs against release. *See e.g., United States v. Carroll*, 545 F. Supp. 3d 674, 680 (N.D. Iowa 2021) (weighing the fact that the defendant had served less than 50% of his mandatory minimum sentence against release). However, in a case such as this, when the defendant has served nearly 30 years (which would be a functional life sentence for many older defendants), the existence of the mandatory minimum does not weigh strongly against release.

In addition to Astello's positive performance while in BOP custody and the efforts he has made to atone for his criminal conduct, sister has offered him a job at the Central Mini Mall, which she owns, if he is released. Doc. 969-19 at 2; Doc. 969 at 29. Moreover, Astello will be on supervised release for five years, which will permit the court to monitor him and impose consequences if he engages in wrongful conduct. *See, e.g., Carroll*, 545 F. Supp. 3d at 682 ("[C]ontinued restrictions on his freedom through supervision contribute to the goal of imposing sufficient punishment."); *United States v. Smith*, 464 F. Supp. 3d 1009, 1025 (N.D. Iowa 2020) (same). For all of these reasons, I find that there is a low risk that Astello will be a danger to any person or the community if he is released.

Having found that Astello has shown extraordinary and compelling reasons, and having considered all the § 3553 factors, I find that Astello is eligible for a sentence reduction and therefore accept the parties' joint recommendation (Doc. 979) of 348 months.

## V. CONCLUSION

For the foregoing reasons:

1. Defendant Ramiro Astello's motion (Doc. 969) for compassionate release is granted. His previously-imposed sentence of life is hereby reduced to a term of 348 months imprisonment,[9] but not less than time served.

2. The execution of this order is **stayed** for twenty-one (21) days to allow the Bureau of Prisons and United States Probation an opportunity to make the necessary arrangements if this reduction results in Astello's immediate release.

3. All other aspects of the judgment (Doc. 722) remain in effect, including those related to Astello's term of supervised release.

4. The Clerk of Court shall provide a copy of this order to the Probation Office and the institution where Astello is incarcerated.

**IT IS SO ORDERED** this 31st day of July, 2025.

_____
Leonard T. Strand
United States District Judge

---

[9] This consists of 348 months (but not less than time served) on Counts 1, 2 and 3, to be served concurrently.